IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**HERIBERTO ROSADO-VEGA**,

   Plaintiff,

   v.

**COMMISSIONER OF SOCIAL SECURITY**,

   Defendant.

Civil No. 13-1392 (BJM)

## OPINION AND ORDER

Heriberto Rosado-Vega ("Rosado") seeks review of the Commissioner's decision finding that he is not entitled to disability benefits under the Social Security Act ("Act"), 42 U.S.C § 423, as amended, (Docket No. 1), and filed a memorandum of law in support of his position. (Docket No. 17). Rosado asks for judgment to be reversed and an order awarding disability benefits, or in the alternative to remand the case to the Commissioner for further proceedings. The Commissioner answered the complaint (Docket No. 11) and filed a memorandum. (Docket No. 18). This case is before me on consent of the parties. (Docket Nos. 4-7). After careful review of the administrative record and the briefs on file, the Commissioner's decision is vacated and remanded for proceedings consistent with this opinion.

## STANDARD OF REVIEW

The court's review is limited to determining whether the Commissioner and her delegates employed the proper legal standards and found facts upon the proper quantum of evidence. *Manso-Pizarro v. Secretary of Health & Human Services*, 76 F.3d 15, 16 (1st Cir. 1996). The Commissioner's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law,

or judging matters entrusted to experts. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Ortiz v. Secretary of Health & Human Services*, 955 F.2d 765, 769 (1st Cir. 1991). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Visiting Nurse Association Gregoria Auffant, Inc. v. Thompson*, 447 F.3d 68, 72 (1st Cir. 2006) (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodriguez Pagan v. Secretary of Health & Human Services*, 819 F.2d 1, 3 (1st Cir. 1987).

A claimant is disabled under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the statute, a claimant is unable to engage in any substantial gainful activity when he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a)(3).

The Commissioner must employ a five-step evaluation process to decide whether a claimant is disabled. 20 C.F.R. § 404.1520; *see Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Goodermote v. Secretary of Health & Human Services*, 690 F.2d 5, 6–7 (1st Cir. 1982). In step one, the Commissioner determines whether the claimant is currently engaged in "substantial

gainful activity." If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If not, the disability claim is denied. At step three, the Commissioner must decide whether the claimant's impairment is equivalent to a specific list of impairments contained in the regulations' Appendix 1, which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpt. P, App. 1. If the claimant's impairment meets or equals one of the listed impairments, she is conclusively presumed to be disabled. If not, the evaluation proceeds to the fourth step, through which the ALJ assesses the claimant's residual functional capacity[1] ("RFC") and determines whether the impairments prevent the claimant from doing the work he has performed in the past. If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. § 404.1520(e). If he cannot perform this work, the fifth and final step asks whether the claimant is able to perform other work available in the national economy in view of his RFC, as well as age, education, and work experience. If the claimant cannot, then he is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

At steps one through four, the claimant has the burden of proving that he cannot return to his former employment because of the alleged disability. *Santiago v. Secretary of Health & Human Services*, 944 F.2d 1, 5 (1st Cir. 1991). Once a claimant has demonstrated a severe impairment that prohibits return to his previous employment, the Commissioner has the burden

---

[1] An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 404.1520(e) and 404.1545(a)(1).

under step five to prove the existence of other jobs in the national economy that the claimant can perform. *Ortiz v. Secretary of Health & Human Services*, 890 F.2d 520, 524 (1st Cir. 1989). Additionally, to be eligible for disability benefits, the claimant must demonstrate that his disability existed prior to the expiration of his insured status, or his date last insured. *Cruz Rivera v. Secretary of Health & Human Services*, 818 F.2d 96, 97 (1st Cir. 1986).

## BACKGROUND

Rosado was born on January 13, 1968. He completed high school, and worked from November 1994 to March 2009 in construction (carpenter assistant), maintenance (automobile dealer), and as a slaughter and butcher apprentice. He claims to have been disabled since March 16, 2009 (alleged onset date), at forty-one years of age, due to cervical myositis, lower back pain, bilateral radiculopathy at the L5-S1 level, degenerative disc disease with protrusion at the L4-L5 levels and L5-S1 disc bulge, left knee pain, status post contusion, and moderate single episode major depressive disorder. Rosado applied for a period of disability and disability insurance benefits on June 23, 2010, and last met the Social Security Administration's ("SSA") insured status requirements on June 30, 2014 (date last insured). He did not engage in substantial gainful activity during this period. (Transcript ["Tr."] 13, 15, 21, 71, 367-369, 379, 387-397).

Rosado was treated for his physical conditions at the Auspices of the State Insurance Fund ("SIF") from March 17, 2009 through August 18, 2011 (Tr. 84-120, 127-205, 233-241,

219-232, 393, 395-397, 426, 440, 445-480, 489-565, 630-652)[2]; at the emergency room of the San German Metropolitan Hospital on January 12, 2010 (Tr. 121-126, 395, 481-483); by Dr. Aurelio Collado-Velez, general practitioner, from January 7, 2010 to December 1, 2010 (Tr. 393, 424, 487-488); by Dr. Ramon Toro-Torres, rheumatologist, from June 2, 2010 through February 8, 2011  (Tr. 213-218, 394, 425, 624-629); by Dr. Glorimar Matta Rodriguez from June 25, 2010 to April 4, 2011 (Tr. 425, 439, 484-486); by Dr. Luis Freytes-Lugo from October 20, 2010 to April 11, 2011 (Tr. 424); and by Dr. Harvey W. Lebron-Silva from December 1, 2010 to July 28, 2011 (Tr. 425, 427, 439, 441, 444).  Dr. Alfredo Perez-Canabal performed a consultative neurological evaluation on September 16, 2010.  While performing the examination, he found Rosado to be alert, active, and oriented in time, place, and person.  (Tr. 566-576).  Dr. Ulises Melendez, internist and medical consultant from the Disability Determination Services ("DDS"), assessed that Rosado had the RFC to lift and carry twenty pounds occasionally and 10 pounds frequently, is able to stand and walk for six out of eight work hours and can sit for six out of eight work hours with normal breaks.  (Tr. 577-587).[3]

Rosado was also treated for his mental conditions through the SIF.  Progress notes for his physical and mental health treatments indicate that Rosado, although anxious and depressed, was alert, oriented in the three spheres, cooperative, logical, coherent, relevant, and had no delusions. (Tr. 86, 91, 131, 132, 138, 139, 149, 220, 221, 223, 226, 233-236, 240, 426, 440, 644-646).  The SIF referred the case to Dr. Alberto Rodriguez-Robles, psychiatrist, who evaluated Rosado on

---

[2] The record also contains evidence of treatment through the SIF for disc bulge and degenerative disc disease from November 6, 2000 to May 17, 2001.  (Tr. 396).

[3] Rosado included in his memorandum a summary of his physical limitations and treatments received, but does not dispute the ALJ's findings as to his physical conditions and ability to perform physical work.

April 6, 2010. Rosado told Dr. Rodriguez that he was in a depressive mood, was apathetic, and could not concentrate or sleep well. Regarding his work history, he told Dr. Rodriguez that he got along well with co-workers and supervisors. He was able to groom and dress himself, and stayed at home almost all day (activities of daily living). He was withdrawn and did not like to share with people (social functioning). Dr. Rodriguez found that Rosado had a depressive mood, restricted affect, a noticeable psychomotor retardation, and diminished attention and concentration. His thought content was of ideas of self-depreciation, helplessness, and hopelessness, but no suicidal ideas. On the other hand, his thought flow was adequate, logical, coherent, and relevant. Rosado had average intellectual capacity, was oriented in the three spheres, and his judgment and memory were adequate. Dr. Rodriguez provided an Axis I diagnosis of 296.23 (major depressive disorder, single episode, severe without psychotic behavior), with a guarded prognosis, but no assessment as to his work capacity or inability to perform work. He recommended psychiatric treatment, rest, and medications. (Tr. 133-137, 496-499).

Rosado prepared on August 2, 2010 a function report on how his conditions limited his activities. Although physically limited and in pain, he could occasionally cook, help with house chores such as washing dishes and dusting furniture, watch television, drive a car to nearby places, go grocery shopping, and regularly attend church. He also claimed feeling depressed, having difficulty paying attention (could be attentive for a short time) and completing tasks, and being forgetful when following instructions (needs instructions repeated to him). He further reported getting along fine with authority figures. (Tr. 76-83).

Rosado-Vega v. Commissioner of Social Security, Civil No. 13-1392 (BJM)                    7

The DDS referred the case to the treating psychiatrist, Dr. Rodriguez, who performed a consultative psychiatric evaluation on February 16, 2011, and made the same findings and diagnosis as in 2010, except that his thought process was slow and his attention and concentration were poor (he was easily distracted).  (Tr. 206-210, 588-592).

On February 25, 2011, Dr. Jose Casiano, non-examining psychiatrist from the DDS, reviewed Dr. Rodriguez's treating and consultative psychiatric reports[4] and Dr. Perez-Canabal's consultative neurological evaluation.  Dr. Casiano reported that the evidence in the record indicated that Rosado suffered from a severe emotional condition, and he projected that, since it was a recent onset, it would not last for twelve months, if treated appropriately.  Dr. Casiano assessed that, as of February 16, 2012, Rosado would be suffering from "major depression in full remission," with mild to no functional limitations as of February 16, 2012 (a mild restriction of activities of daily living, mild difficulties maintaining social functioning, mild difficulties maintaining concentration, persistence and pace, and no episodes of decompensation of extended duration.)[5]  (Tr. 17-18, 593-608).

The claim was denied on February 25, 2011, and upon reconsideration on May 23, 2011. (Tr. 13, 63-69, 242-243, 246-249, 254-266).  Rosado requested a hearing before an ALJ (Tr. 267-269), which was held on January 24, 2012. In a series of questions, the ALJ asked a vocational expert ("VE") whether a person with Rosado's same work experience, age, education, and

---

[4] Although the diagnostic code used by Dr. Rodriguez in both his evaluations indicates a severe major depression, Dr. Casiano's summary of Dr. Rodriguez's evaluations states that his diagnosis was of moderate major depression.  (Tr. 136, 209, 593).

[5] Dr. Casiano submitted a psychiatric review technique form, and specified that the assessment contained in it was projected to February 16, 2012, twelve months after Dr. Rodriguez-Robles performed the consultative psychiatric evaluation.  His analysis does not cite record evidence that Rosado had been improving with treatment.  (Tr. 593).

various physical limitations and mental limitations could perform past work.  For all the questions, the VE answered that such a person would not be able to perform past work, but that there were other jobs in the national economy that he could perform.  (Tr. 29-62).

The first question posed by the ALJ was whether a person with the claimant's same work experience, age, and education, and a set of physical limitations but no mental limitations could perform past work.  The VE testified that such a person could perform a full range of light work, but would not be able to perform past work because these were medium or heavy work, and that there were jobs available in the Puerto Rican economy and/or national economy that he would be able to perform, such as assembler, car wash attendant, and hand packager.  (Tr. 35-37).

For the second hypothetical question, the ALJ added the following mental limitations to those included in the first hypothetical: (1) can make simple work decisions, (2) understand and carry out simple, short instructions, (3) have contact with co-workers and supervisors, (4) can respond appropriately to co-workers and supervisors, and work changes, (5) can maintain regular and punctual attendance and carry out work tasks on schedule.  The VE testified that the same answer for the first hypothetical applies to this one.  (Tr. 37).

For the third hypothetical question, the ALJ added a set of physical limitations to the first two questions.  The VE answered that this person could not perform past work, but is able to do a full range of sedentary work, and that there are jobs in the local and national economy that he could perform, such as assembler, charge account clerk, and telephone quotation clerk.  (Tr. 38-40).

The fourth question posed another set of physical limitations, and added some mental limitations to those posed in the second question.  These are: (1) can make simple work

decisions, (2) can tolerate few changes at work, (3) can remember and follow simple instructions, (4) can have contact with co-workers and supervisors and respond appropriately to them, (5) have occasional contact with the public, and (6) maintain punctual and regular attendance and perform his tasks on schedule. The VE testified that such a person could not perform past work but could perform the sedentary jobs he mentioned in the third hypothetical. (Tr. 40-42).

Rosado's attorney asked whether the person in the hypotheticals could perform work if he could only concentrate and maintain attention for one hour. The VE answered that he would not be able to work because "[t]he Social Security Regulations indicate that the person must be able to concentrate and maintain attention for a period of two hours." The VE further stated that "if within that time he does not maintain productivity when he is concentrating obviously he cannot maintain the work quota in Puerto Rico as in the United States." (Tr. 52).

Counsel also asked the VE whether he had conducted studies as to how the jobs he mentioned were performed in Puerto Rico, to which he answered that he had observed how these jobs were performed in Puerto Rico, except for the inspector and assembler (manufacturing) jobs, which he had not observed in Puerto Rico but had observed in the United States, and are described in the Dictionary of Occupational Titles, which is applicable for the fifty states and territories, and that in his opinion they are performed the same way. (Tr. 44-51, 55-58).

The ALJ issued a written decision on February 3, 2012, finding that Rosado was not disabled under sections 216(i) and 223(d) of the Act. The ALJ found at step five of the sequential evaluation process that Rosado had severe physical impairments (cervical myositis, lower back pain, bilateral radiculopathy at the L5-S1 level, degenerative disc disease with

protrusion at the L4-L5 levels and L5-S1 disc bulge, left knee pain, status post contusion). The ALJ determined that Rosado had the physical RFC to perform sedentary work, as defined in 20 CFR 404-1567(a). (Tr. 19-20). As to Rosado's mental condition, the ALJ found that Rosado's single episode major depressive disorder was moderate in intensity, and limited him to unskilled,[6] simple, repetitive and routine tasks, precluding performance of complex tasks. Rosado would be able to make simple work-related decisions, understand and remember short, simple instructions, have contact with the public, co-workers and supervisors and respond appropriately to them, change tasks, maintain regular attendance and punctuality, and complete tasks within the work schedule. (Tr. 18, 20). The ALJ concluded that although Rosado was unable to perform past relevant work, considering his age, education, work experience, and RFC, there were a significant number of jobs in the national economy that he could perform. (Tr. 21-22).

Rosado requested review of the ALJ's decision on March 7, 2012, which the Appeals Council denied on March 16, 2013. (Tr. 1-6).

**DISCUSSION**

This court must determine whether there is substantial evidence to support the ALJ's determination at Step Five in the sequential evaluation process contained in 20 C.F.R. § 404.1520 that based on Rosado's age, education, work experience, and RFC, there was work in the national economy that he could perform, thus rendering him not disabled within the meaning

---

[6] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. ... A person does not gain work skills by doing unskilled jobs." 20 C.F.R. § 404.1568(a).

of the Act. Rosado argues that the ALJ did not deploy the correct legal standards because she made mental RFC findings that did not accurately reflect his mental RFC and formulated a defective hypothetical question, thus not complying with the standard set out in *Arocho v. Sec'y of Health and Human Services*, 670 F.2d 374, 375 (1st Cir. 1982). He further argues that the ALJ based her findings on her own opinion and Dr. Casiano's projected RFC assessment, did not rely on Dr. Rodriguez's (treating psychiatrist and SSA consultant) assessment regarding his mental condition as it existed at the time of proceedings (specifically as to his psychomotor retardation and diminished capacity to pay attention and concentrate), and did not explain the weight given to each medical opinion, as per 20 C.F.R. § 404.1527(d), and SSRs 96-2p and 96-8p. (Docket No. 17, p. 2-6, 20-23). The Commissioner argues that there is substantial evidence in the record to support the ALJ's decision that Pérez is not entitled to disability benefits and requests that his decision be affirmed.

      The VE's testimony is relevant to the inquiry insofar as the hypothetical questions posed by the ALJ to the VE accurately reflect the claimant's functional work capacity. In reviewing the evidence, the ALJ should give "*more* weight to opinions from [a claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)." 20 C.F.R. § 404.1527(d)(2). In addition, controlling weight must be given to a medical treating source's opinion if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record. 20 C.F.R. § 404.1527(d)(2); SSR 96-2p. However, it is well within an ALJ's authority to weigh the evidence, to determine credibility of the plaintiff's subjective complaints, and to use only credible evidence in posing a

hypothetical question to a vocational expert. *Arocho*, 670 F.2d at 375 (ALJ must decide what testimony will be credited when forming the hypothetical questions). In other words, a VE's testimony must be predicated on a supportable RFC assessment. *See* 20 C.F.R. § 404.1520(g)(1). In this case, the ALJ found that Rosado's mental condition limited him to unskilled, simple, repetitive and routine tasks, precluding performance of complex tasks, and he would be able to make simple work-related decisions, understand and remember short, simple instructions, have contact with the public, co-workers and supervisors and respond appropriately to them, change tasks, maintain regular attendance and punctuality, and complete tasks within the work schedule. (Tr. 18, 20).

Although Dr. Casiano's functional limitations assessment was projected,[7] the ALJ, after a longitudinal analysis of the whole medical record, agreed with him in three out of the four categories: that Rosado had a mild restriction of activities of daily living, mild difficulties maintaining social functioning, and no episodes of decompensation of extended duration. The ALJ found that Rosado had moderate (instead of mild) difficulties maintaining concentration, persistence and pace. (Tr. 18, 604). The record supports these findings as to the first three functional areas. As to activities of daily living, Rosado reported being able perform daily tasks such as grooming himself, preparing meals, helping with some housework, driving, shopping and attending church. (Tr. 77-80). As to social functioning, Rosado reported being socially

---

[7] I note that Dr. Casiano was asked to provide a current mental RFC assessment (Tr. 608). He did not submit a mental RFC assessment form (Form SSA-4734-F4), but instead submitted a PRTF (Form SSA-2506-BK), in which he check-marked the degree of functional limitations. (Tr. 594-607). In it, he summarized the medical evidence, but did not discuss how it related to his projected PRTF.

withdrawn, but got along well with co-workers and supervisors. (Tr. 207). The record contains no evidence of episodes of decompensation.

The record also supports a finding that Rodriguez had at least moderate difficulties in his ability to pay attention, concentrate, and keep pace. (Tr. 18, 19). "Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.00(C)(3). The key issue that arises by Rosado's claim here is that the ALJ failed to rely on the treating physician's opinion, so his moderate difficulty paying attention and concentrating wasn't properly factored into the RFC, and hence, the hypothetical questions. The way that the ALJ formulated the RFC and hypothetical questions concerns a person that can remember short simple instructions and sustain focused attention and concentration long enough to complete tasks within the work schedule. The VE answered that such a person would be able to work. However, upon questions by Rosado's attorney setting a one-hour limit on the ability to maintain attention and concentration, the VE answered that such a person would not be able to work because the Social Security Regulations require that a person concentrate and maintain attention for a period of two hours. This person would not be able to comply with productivity and work quota standards.

Among the mental abilities needed to understand, carry out, and remember simple instructions in any job is the ability to remember very short and simple instructions, and the "ability to maintain concentration and attention for extended periods (the approximately 2-hour segments between arrival and first break, lunch, second break, and departure)." Social Security Administration's Program Operations Manual System ("POMS") DI 25020.010(B)(2)(a).

Specifically as to unskilled work, the claimant must be able to maintain attention for extended periods of 2-hour segments (concentration is not critical). POMS DI 25020.010(B)(3)(d). From the evidence available in the case record, it is not clear whether Rosado may be able to meet this work requirement. The sum of the evidence in the record portrays a man who is socially withdrawn and has difficulty concentrating while performing mental exercises but is nonetheless alert, oriented, cooperative, and who self-reported getting along with co-workers and supervisors and being able to complete simple, routine, repetitive tasks such as house chores (cook, wash dishes, dust furniture, do grocery shopping) as allowed by his physical limitations. Although the SIF record offers a consistent portrayal of an alert, oriented, and cooperative patient receiving treatment for physical ailments and depression, Dr. Rodriguez's evaluation as treating physician states that Rosado's attention and concentration were diminished. As consultative physician, Dr. Rodriguez further added that Rosado was easily distracted and could not concentrate while performing a mental exercise (he could not follow the sequence of the calendar months backwards), thus assessing that his ability to pay attention and concentrate was poor. (Tr. 208). I find that, although the ALJ was required to express the moderate impairment in terms of work-related functions or work-related mental activities, as required by SSR 96-8p, the limitation to simple, routine, repetitive, and unskilled tasks the ALJ included in the hypothetical to the VE did not clearly relate the moderate impairment, and, as a result, the ALJ's reliance on the jobs the VE identified in response to the hypothetical was not supported by substantial evidence. *Jaramillo v. Colvin*, 576 Fed. Appx. 870, 876-877 (10th Cir. 2014) (quotations and citations omitted). *See Gonzalez v. Colvin*, 2015 WL 224656 1, 7 (D.P.R. Jan 15, 2015) (Case was remanded because,

among other issues, the ALJ erred in concluding that the claimant was able to maintain concentration for two-hour intervals.)

On a final note, the ALJ did not include a discussion as to the weight she gave the mental medical evidence (although she did so for the physical evidence), as required under the "good reasons" requirement of 20 C.F.R. § 404.1527(d)(2),[8] but she did state what evidence she considered in her findings, specifically citing record evidence from the SIF, Dr. Rodriguez, and Dr. Casiano.

## Conclusion

For the foregoing reasons, the Commissioner's decision is vacated, and the matter is remanded for further proceedings as to whether Rosado has the ability to pay attention, concentrate, and keep pace in simple, unskilled work-related activities. Upon remand, the ALJ is free to consider any additional evidence deemed necessary to aid in determining whether the plaintiff is disabled. This ruling should not be considered by the parties as an opinion on the ultimate merits of plaintiff's disability claim upon remand.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 3rd day of March, 2015.

                                                      *S/ Bruce J. McGiverin*
                                                      BRUCE J. MCGIVERIN
                                                      United States Magistrate Judge

---

[8] Under the "good reasons" requirement, "the notice of determination must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p.